IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MAUREEN THURSTON,

                    Plaintiff,

        v.

CHERRY HILL TRIPLEX,

                    Defendant.

HON. JEROME B. SIMANDLE

Civil No. 06-3862 (JBS)

**OPINION**

APPEARANCES:

Ari R. Karpf, Esq.
Karpf, Karpf & Virant, Esqs.
Neshaminy Plaza
3070 Bristol Pike
Building 1, Suite 102
Bensalem, PA 19020
        Attorney for Plaintiff

Robyn F. McGrath, Esq.
Sweeney & Sheehan
Sentry Office Plaza
216 Haddon Avenue, Suite 500
Westmont, NJ 08108
        Attorney for Defendant

**SIMANDLE**, District Judge:

The federal Family and Medical Leave Act grants eligible employees up to twelve weeks of medical leave in a year without losing their jobs. In this case, Plaintiff Maureen Thurston alleges that her former employer, Foulke Management Corp., d/b/a Cherry Hill Triplex, violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, ("FMLA"), when it terminated her position after she took FMLA leave to have surgery on her

Achilles tendon.  In her Complaint, Plaintiff asserts three Counts: (1) that Defendant interfered with rights she was entitled to under the FMLA (the "interference" claim); (2) that Defendant retaliated against her for exercising her rights under the FMLA (the "retaliation" claim); and (3) that Defendant wrongfully terminated Plaintiff in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12 ("NJLAD"). Plaintiff seeks lost compensation and benefits, damages, other equitable relief, and attorney fees as a remedy.[1]

Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Docket Item No. 11], which challenges all Counts of Plaintiff's complaint.  With regard to Counts One and Two, Defendant asserts that Plaintiff exceeded the twelve weeks of protected leave the FMLA provides and consequently cannot avail herself of the FMLA's protections. Count Three alleges that defendant violated the NJLAD in terminating Plaintiff because she had a disability, real or perceived.  Because Plaintiff does not claim that she is or was disabled, the primary issue to be decided as to Count Three is whether for the purposes of summary judgment Plaintiff has produced sufficient evidence to show that Defendants perceived her as disabled and terminated her because of that perceived

---

[1]    Additionally, Plaintiff demands that Defendant be enjoined from further discrimination and that Defendant promulgate and adhere to a policy prohibiting discrimination and retaliation.

2

disability.

For the reasons stated herein, this Court will deny
Defendant's motion as to Count Two because genuine issues of
material fact exist as to whether Defendant retaliated against
Plaintiff for exercising her FMLA rights.  The Court will grant
Defendant's motion with respect to Count One and Three because
Count One fails as a matter of law, and because Plaintiff has
failed to establish a prima facie case of unlawful discrimination
under the NJLAD.

## I. **BACKGROUND**

Plaintiff Maureen Thurston began working for Defendant on
February 10, 2004 as a bookkeeper and was employed in that
position until her dismissal in November of 2005. (Compl. ¶ 12.)
Plaintiff was supervised directly by Patricia Warren, Defendant's
office/accounting manager, during her entire period of employment
with Defendant. (Thurston Dep. at 14, Pl.'s Opp'n Br. Ex. A.)  On
June 6, 2005, Plaintiff verbally informed Warren that she
required a medical leave of absence for a necessary surgery on
her Achilles tendon.  (Forrest Dep. at 35, Pl.'s Opp'n Br. Ex.
B.) Plaintiff testified that her doctor informed her that the
surgery would require approximately twelve weeks of leave;
however, if her foot required an anchor the leave could possibly
be longer.  (Thurston Dep. at 18.)  The employer granted the
leave which began on July 13, 2005, and the surgery was performed

on July 14, 2005 at Summit Surgical in Voorhees, New Jersey.
(Thurston Dep. at 19.)

Pursuant to the notice requirements of the FMLA, Defendant
mailed Plaintiff a cover letter and United States Department of
Labor ("DOL") form in order to provide Plaintiff with
confirmation that she was taking FMLA leave and also providing
the required notice of her rights, obligations, and any
consequences of failure to follow the requirements associated
with FMLA leave.  (Id. Ex. C.)  The cover letter and FMLA form
specified that Plaintiff was taking leave for an "unspecified
amount of time" and required Plaintiff to furnish Defendant with
bi-weekly reports on her condition and anticipated date of
return.  (Id.)  The parties dispute the date said notice was
received by Plaintiff.  Dona Forrest, Defendant's Human Resources
manager in charge of processing employee FMLA leave at the time
of the incident, testified that she mailed the forms on Friday,
July 13, 2005 and that Plaintiff likely received them the
following Monday or Tuesday.  (Forrest Dep. at 40.)  However,
Plaintiff asserts that she did not receive the forms until "the
end of July, I don't remember the exact date."  (Thurston Dep. at
32.)

Defendant's leave policy and the FMLA notice Plaintiff
received after her surgery contained statements explaining that
FMLA leave is only available for a maximum of twelve weeks in a

4

twelve-month period. (Id. at Ex. D. &  Ex. C.)  However,
Plaintiff asserts that she did not understand this temporal
limitation on FMLA leave or that exceeding twelve weeks could
result in termination.  (Thurston Dep. at 26.)  Plaintiff further
stated in her deposition that following her surgery on July 14,
2005 she contacted Defendant through Warren, her supervisor, and
informed her "that the doctor had put the anchor in my foot and
that I was going to be out probably longer than the twelve-week
period. And she told me just to keep in contact with Dona." (Id.
at 40.)  Moreover, Plaintiff further alleges that in said
conversation Warren told her to "take whatever time I needed to
get recovered." (Id. at 56.)

     Defendant admits that this conversation "may" have occurred,
but disputes the substance of the call, asserting that Plaintiff
did not communicate a date of return.  (Def.'s Answer ¶¶ 16-21.)
Warren testified that she never was contacted by Plaintiff and
did not have the conversation with Plaintiff on July 14, 2005.
(Warren Dep. at 65-66, Pl.'s Opp'n Br. Ex. L.)  However,
Plaintiff has submitted phone records which show that she
contacted Defendant on July 14, August 2, 23, September 7, 20,
October 28, November 16 and 21.  (Pl.'s Opp'n Br. Ex. F.)

     On November 25, 2005, Plaintiff received a letter dated
November 23, 2005, informing her that her position had been
terminated because she exceeded the twelve weeks of leave allowed

5

by the FMLA, failed to keep in contact with Defendant, and failed to provide documentation during the additional six weeks of leave.  (Pl.'s Opp'n Br. Ex. G.)[2]

Plaintiff filed this Complaint against Defendant on August 16, 2006 [Docket Item No. 1].  After a lengthy period of pretrial discovery, Defendant filed the instant motion for summary judgment, to which the Court now turns [Docket Item No. 11].

## II. DISCUSSION

### A. Summary Judgment Standard of Review

Defendant has moved for summary judgment as to all Counts pursuant to Rule 56, Fed. R. Civ. P.  A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of

---

[2]  Plaintiff alleges that Forrest had informed her to bring a doctor's note on the day she returned from work. (Pl.'s Opp'n Ex. A. at 33.)

6



summary judgment.  Id.[3]

On Defendant's motion for summary judgment, the Court must view the evidence in the light most favorable to Plaintiff.  Yet the non-moving party must come forward with some admissible evidence: "Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial.'"  United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)).

**B.  Claims Under the FMLA (Counts I & II)**

The FMLA was enacted to provide up to twelve weeks of leave for workers whose personal or medical circumstances necessitate that they take time off from work in excess of what their employers are willing to provide.  See 29 U.S.C. § 2601, et seq.; see also Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d

---

[3]  Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors v. P'ship Composed of Gepner and Ford, 930 F.2d 1056, 1061-62 (3d Cir. 1991).

Cir. 1997) (citing 29 C.F.R. § 825.101).[4]  Employees who take FMLA

leave are entitled to certain protections.  See 29 U.S.C. § 2614.

For example, an employee's leave cannot be denied, his or her

health benefits must be maintained and, upon return from leave,

he or she must be restored to the same, or an equivalent,

position.  See id.  To protect these rights, employers are

prohibited from engaging in certain prohibited acts.  See 29

U.S.C. § 2614.  First, § 2615(a)(1) makes it unlawful for "any

employer to interfere with, restrain, or deny the exercise of or

the attempt to exercise, any right provided" under the FMLA.  Id.

at § 2615(a)(1) (a so-called "interference" claim).  Second, §

2615(b) makes it unlawful for "any employer to discharge or in

_____

[4] The Act is intended "to balance the demands of the
workplace with the needs of families . . . by establishing a
minimum labor standard for leave" that lets employees "take
reasonable leave for medical reasons, for the birth or adoption
of a child, and for the care of a child, spouse or parent who has
a serious health condition."  Churchill v. Star Enters., 183 F.3d
184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).
    In furtherance of these objectives, the FMLA requires that
an eligible employee receive twelve weeks of leave under certain
circumstances.  See 29 U.S.C. § 2612.  These include the onset of
a "serious health condition that makes the employee unable to
perform the functions of the position of such employee."  Id. at
§ 2612(a)(1)(D).  A "serious health condition" is "an illness,
injury, impairment, or physical or mental condition" that
involves "(A) inpatient care in a hospital or (B) continuing
treatment by a health care provider."  Id. at § 2611(11).  When
"an eligible employee needs to take FMLA leave that was not
foreseeable, 'the employee need not expressly assert rights under
the FMLA or even mention the FMLA; rather the employee need only
notify the employer that leave is needed.'"  Conoshenti v. PSE&G
Co., 364 F.3d 135, 141  (3d Cir. 2004)(quoting 29 C.F.R. §
825.303(b) (2005)).

any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA.  <u>Id.</u> at § 2615(b)(a so-called "retaliation" claim).  For the reasons discussed below, the Court will deny Defendant's motion for summary judgment as to Count One & Two but will grant summary judgment on Count Three.

### 1.  <u>Plaintiff's Interference Claim</u>

Interference claims are "based on the prescriptive sections of the FMLA which create substantive rights for eligible employees."  <u>Parker v. Hahnemann Univ. Hosp.</u>, 234 F. Supp. 2d 478, 485 (D.N.J. 2002) (citing <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F.3d 151, 159 (1st Cir. 1998)).  An interference claim is "not about discrimination" and therefore, a burden-shifting analysis, such as that which courts employ under <u>McDonnell Douglas</u> and its progeny, is not required.  <u>Callison v. City of Phila.</u>, No. 03-3008, 2004 U.S. Dist. LEXIS 6770, at *11 (E.D. Pa. 2004 Mar. 31, 2004).  Rather, "these prescriptive rights 'set floors for employer conduct.'"  <u>Parker</u>, 234 F. Supp. 2d at 485 (quoting <u>Hodgens</u>, 144 F.3d at 159.)

The Department of Labor has promulgated regulations regarding interference claims, stating that "any violation of the [FMLA] or of these regulations constitutes interfering with, restraining, or denying the exercise of rights provided by the [FMLA]."  29 C.F.R. § 825.220(b).  "Interference" includes "[a]ny violations of the Act or of these regulations."  <u>Id</u>.  To

9

prevail on an FMLA interference claim, the employee merely needs to show she was entitled to benefits under the FMLA and that she was denied them.  <u>Parker</u>, 234 F. Supp. at 485.  She does not need to show that the employer treated other employees more or less favorably, and the employer cannot excuse its action by offering a legitimate business reason as justification.  <u>Id.</u> (citing <u>Hodgens</u>, 144 F.3d at 159).  This action is merely about whether the employer provided its employee the entitlements and protections guaranteed by the FMLA.  <u>Id.</u>

In this case, Defendant does not dispute that Plaintiff was eligible for medical leave under the FMLA.  Defendant's Statement of Uncontested Material Facts includes a stipulation that Plaintiff was "granted her FMLA leave for up to twelve (12) weeks pursuant to 29 U.S.C.A. § 2612(a)(1).  (Def.'s Mot. for Summ. J., Statement of Uncontested Material Facts at ¶ 8.)  Moreover, it is undisputed that Plaintiff's leave exceeded the twelve weeks permitted by the FMLA. (Thurston Dep. at 34.)  Therefore, Defendant argues that Plaintiff's interference claim fails as a matter of law because she was not entitled to reinstatement because her leave exceeded twelve weeks.  <u>See Katekovich v. Team Rent-A-Car of Pittsburgh, Inc.</u>, 36 Fed. Appx. 688, 690 (3d Cir. 2002) (holding that an employer may terminate an employee if the employee is unable to return to work after the twelve weeks of FMLA leave).  Thus, as a matter of law, the Defendant argues that

Defendant was within its legal right to terminate Plaintiff because at the time Plaintiff was terminated, the FMLA no longer afforded Plaintiff the right to return to her previous job or a comparable position.

Plaintiff asserts in response that her interference claim has merit, and should survive summary judgment, because Defendant interfered with her FMLA rights when Defendant failed to provide all the required individualized notice to which she was entitled concerning FMLA rights, obligations, and limitations. Specifically, Plaintiff contends that Defendant failed to notify her of the possibility of termination if she failed to return after the twelve weeks had expired, and misled and prejudiced Plaintiff by granting her an extension of leave and not informing her that she was revoking her FMLA protections. See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004).

The Court finds, for the reasons set out below, that the notice Plaintiff received regarding her FMLA rights and obligations was sufficient as a matter of law, and consequently, summary judgment as to Plaintiff's interference claim must be granted.  The Third Circuit ruled in Conoshenti that an employee may state a valid "interference" claim when the employee can show that the employer's failure to give the employee individualized notice regarding FMLA rights rendered the employee "unable to exercise that right in a meaningful way, thereby causing injury."

11

Conshenti, 364 F.3d at 143.[5]   In Conoshenti, the employee
requested medical leave under the FMLA, but the employer never
provided any written or verbal notice concerning the employee's
rights or obligations under the FMLA, including the twelve-week
limitation of FMLA leave.  Id. at 139.   The employee exceeded the
twelve weeks of leave protected by the FMLA and was subsequently
terminated.  Id. at 139-40.   In reversing and remanding the
employer's favorable summary judgment ruling, the Third Circuit
found that the employee had stated a viable theory of recovery
under an interference framework when the employee argued that:

> [h]ad he received the advice PSE & G was obliged to
> provide, Conoshenti insists, he would have been able to
> make an informed decision about structuring his leave and
> would have structured it, and his plan of recovery, in
> such a way as to preserve the job protection afforded by
> the Act.   We conclude that this is a viable theory of
> recovery . . . .

Conoshenti, 364 F.3d at 142-43.

The Third Circuit explained that the notice regulations as
promulgated by the DOL require that employers provide employees
with "individualized notice" of their FMLA rights and
obligations, summarizing that:

> Pursuant  to  29  C.F.R.  §  825.208(a),  "[i]n  all
> circumstances, it is the employer's responsibility to
> designate leave, paid or unpaid, as FMLA-qualifying, and
> to give notice of the designation to the employee...."
> If  an  employer  provides  employees  with  a  handbook

_____

[5]  Injury requires a showing that the employee was
prejudiced by the employer's lack of notice.   See Conshenti, 364
F.3d at 144.

concerning employee benefits, "the handbook must incorporate information on FMLA rights and responsibilities and the employer's policies regarding the FMLA." 29 C.F.R. § 825.301(a)(1). If the employer does not provide such a handbook, such information must be provided when an employee requests leave. 29 C.F.R. § 825.301(a)(2). Moreover, each time the employee requests leave, the employer must, within a reasonable time thereafter-"one or two business days if feasible," "provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1),(c). This specific notice must include, among other things, whether "the leave will be counted against the employee's annual FMLA leave entitlement," 29 C.F.R. § 825.301(b)(1)(i), and "the employee's right to restoration to the same or equivalent job upon return from leave," 29 C.F.R. § 825.301(b)(1)(vii).

Conoshenti, 364 F.3d at 142.

Here, Plaintiff seeks to recover under the theory of recovery approved of in Conoshenti, arguing that her FMLA notice was not sufficient, and had it been, she would have returned to work on or prior to the expiration of her twelve-week FMLA entitlement. Plaintiff first argues that the notice in her employee handbook and post-leave written FMLA notice were insufficient because they did not indicate that termination could result from a failure to return after twelve weeks.[6] In response, the Defendant argues that

---

[6] Plaintiff also asserts that Defendant's failure to furnish her with the written FMLA notice before she left for her leave constituted interference. The Court is not persuaded by this argument. Though 29 C.F.R. § 825.301(c) requires that "[t]he notice shall be given within a reasonable time after notice of leave is given by the employee-within one or two business days if feasible," Plaintiff has not introduced any evidence that had she received the notice prior to her surgery she would have structured her leave any differently. Moreover,

it complied with the notice requirements mandated by <u>Conoshenti</u>

and 29 C.F.R. § 825.301(b)(1),[7] and that Plaintiff should have been

---

Plaintiff's claim is, in essence, premised on her lack of
understanding of the FMLA information contained in the employee
handbook and written FMLA notice.  Therefore, the approximate
date of her receipt of the FMLA notice is not a genuine issue of
material fact for the factfinder because no prejudice can be
found.

[7]    29 C.F.R. § 825.301(b)(1) states:

The employer shall also provide the employee with written
notice    detailing    the    specific    expectations    and
obligations    of    the    employee    and    explaining    any
consequences of a failure to meet these obligations.  The
written notice must be provided to the employee in a
language in which the employee is literate . . . .  Such
specific notice must include, as appropriate:
(i) that the leave will be counted aganist the employee's
annual FMLA leave entitlement (see § 825.208);
(ii) any requirements for the employee to furnish medical
certification  of  a  serious  health  condition  and  the
consequences of failing to do so (see § 825.305);
(iii) the employee's right to substitute paid leave and
whether the employer will require the substitution of
paid leave, and the conditions related to any submission
of  paid  leave,  and  the  conditions  related  to  any
substitution;
(iv) any requirement for the employee to make any premium
payments to maintain health benefits and the arrangements
for  making  such  payments  (see  §  825.210),  and  the
possible consequences of failure to make such payments on
a  timely  basis  (i.e.,  the  circumstances  under  which
coverage may lapse);
(v)  any  requirement  for  the  employee  to  present  a
fitness-for-duty certificate to be restored to employment
(see § 825.310);
(vi) the employee's status as a "key employee" and the
potential  consequences  that  restoration  may  be  denied
following FMLA leave, explaining the conditions required
for such denial (see § 825.218);
(vii) the employee's right to restoration to the same or
an equivalent job upon return from leave (see §§ 825.214
and 825.604); and,
(viii) the employee's right to restoration for payment of

14

fully aware of the twelve-week limit of FMLA protection given the employee family and medical leave policy and written notice Plaintiff received.

As to the aforesaid notice, this Court is persuaded that as a matter of law, the notice was sufficient to meet the requirements of 29 C.F.R. § 825.301(b)(1) as construed by <u>Conshenti</u>. Unlike <u>Conoshenti</u>, where the employee received no notice regarding his FMLA rights or obligations, here the employer's family and medical leave policy and the written notice sent to Plaintiff clearly state that an employee is only entitled to twelve weeks of leave. The DOL form which Plaintiff admittedly received and signed, (Thurston Dep. at 30), states: "Except as explained below, you have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period for the reason listed above." (Pl.'s Opp'n Br. Ex. C.). Furthermore, Defendant's leave policy clearly states under the subheading "<u>MAXIMUM LEAVE</u>", that "The maximum Family and Medial Leave time which may be requested or which will be approved is twelve (12) weeks within twelve (12) months." (<u>Id.</u> Ex. D.) Moreover, the Defendant correctly argues that the DOL FMLA leave form Defendant had Plaintiff sign fulfills its mandatory notice requirements. The form, which is provided by DOL, states: "This

---

health insurance premiums paid by the employer during the employee's unpaid FMLA leave if the employee fails to return to work after taking FMLA leave (see § 825.213).

29 C.F.R. § 825.301(b)(1)

optional use form may be used to satisfy mandatory employer
requirements to provide employees taking FMLA leave with written
notice detailing specific expectations and obligations of the
employee and explaining any consequence of a failure to meet those
obligations. (29 CFR § 825.301(b))."  (Def.'s Mot. Ex. C.)
Furthermore, said leave form is specifically endorsed to satisfy
individualized notice requirements by the DOL in § 825.301(b)(2),
which states in pertinent part: "A prototype notice is contained
in Appendix D of this part, or may be obtained from local offices
of the Department of Labor's Wage and Hour Division, which
employers may adapt for their use to meet these specific notice
requirements."

In short, the Court finds that the notice Plaintiff received
regarding her FMLA rights and obligations contained in the
employer's family and medical leave policy and written notice was
sufficient to put a reasonable employee on notice of his or her
FMLA rights.  The information Defendant provided satisfies the
individualized notice requirements of <u>Conoshenti</u> and § 825.301 as
a matter of law.  <u>See also</u> <u>Wiggins v. Davita Tidewater, LLC</u>, 451
F. Supp. 2d 789, 803 (E.D. Va. 2006) (holding that the employee
received adequate notice of the FMLA's twelve week limitation
because it was listed on the employee's leave request form and in
the employee handbook).

Plaintiff next argues that had she not been misled about a

16

possible extension of her leave, she would have returned to work within the protected time period in order to preserve her employment.[8]  It is clear from the holding and reasoning of Conoshenti that if the employer actually violates the FMLA's individualized notice provisions by failing to inform the employee about the right and obligations associated with FMLA leave, it is not an automatic bar to the employee's ability to bring a valid interference claim if the employee exceeds the twelve weeks of leave protected under the FMLA.  However, as the Court explains, infra, Conoshenti does not suggest that an employee who was actually provided proper notice under § 825.301 may recover under an interference theory simply because an employer does not explain how additional non-FMLA leave affects the employee's ability to return to a position after the twelve-week leave period expires.

Generally, courts within this Circuit and others have been reluctant to extend the ability of a Plaintiff to bring FMLA interference claims, or extending the FMLA's right to reinstatement beyond twelve weeks, when the employee takes leave beyond the twelve-week FMLA entitlement period and is subsequently terminated.  In Devine v. Prudential Ins. Co. Of America, No. 03-3971, 2007 WL 1875530 (D.N.J. June 28, 2007) the court found that an employee who was terminated after staying out of work for more

---

[8]  Plaintiff bases this argument on her assertion that Warren told her to "take whatever time I needed to get recovered."  (Dep. of Thurston at 56.)

than twelve weeks pursuant to the employer's permission could not

bring an FMLA interference claim because her twelve weeks of

protected leave had expired, and the employer had no obligation to

provide her with notice that she was no longer protected by the

FMLA. See id. at *28-31 (citing Pert v. Value RX, No. 96-CV-73153-

DT, 1996 WL 1089866, at *2-8 (E.D. Mich. Oct. 9, 1996)); see also

Dogmatis v. Capital Blue Cross, 413 F. Supp. 2d 452, 462-63 (E.D.

Pa. 2005) (holding that FMLA protections do not apply to non-FMLA

leave and therefore employees who exhaust their FMLA leave are not

entitled to job restoration, even if the extended leave was

pursuant to employer permission); McGregor v. Autozone, 180 F.3d

1305, 1308 (11th Cir. 1999) (holding that the text of the FMLA did

not suggest that twelve weeks could be extended and that when an

employer provides more than twelve weeks of leave the employer

should not be liable for interfering with FMLA rights).[9]

---

[9] The Court acknowledges that there are cases permitting
interference claims in cases where the employee is terminated
after taking leave in excess of twelve weeks because the employee
reasonably believed that the employer's internal extended leave
program provided the protections of the FMLA during the course of
the additional non-FMLA leave.  See Santosuosso v. Novacare
Rehabilitation, 462 F. Supp. 2d 590, 597-98 (D.N.J. 2006) (where
an employee takes leave beyond the twelve-week FMLA entitlement
pursuant to the employer's permission and internal leave program,
but the employer does not inform the employee that such
extensions revoke FMLA protection, holding that "in light of the
Congressional encouragement for employers to provide more
generous benefits than mandated by law, see 29 U.S.C. § 2653,
[the employee] should not lose her FMLA protections. . . ."); see
also Fry v. First Fidelity Bancorporation, No. A. 95-6019, 1996
WL 36910 at *1 (E.D. Pa. 1996) (holding that it can constitute
interference with the employee's FMLA rights when the employer

18

Consequently, because the Defendant provided adequate individualized notice, and Plaintiff was granted and utilized her twelve-week FMLA entitlement, the Plaintiff was not denied her statutory benefit under the FMLA, and as a result, can not state a claim for interference as a matter of law.  Therefore, summary judgment with respect to this claim will be granted.

### 2.  **Plaintiff's Retaliation Claim**

Plaintiff's second theory of recovery under the FMLA is known as the retaliation, or discrimination, theory.  A retaliation claim arises from the FMLA's protection of employees who have exercised their rights under the statute.  <u>Hodgens</u>, 144 F.3d at 159.  It is based on the idea that the substantive rights established by the FMLA prevent an employer from discriminating against employees or prospective employees who have taken FMLA leave.  29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).

Defendant has again argued that because Plaintiff exceeded

---

fails to adequately notify its employees about apparent conflicts between their internal leave program and the rights provided by the FMLA such that it causes the employee "to unwittingly forfeit the protection of the FMLA.").

The Court finds that <u>Santosuosso</u> and <u>Fry</u> are factually distinguishable from this case.  Unlike <u>Santosuosso</u> and <u>Fry</u>, where the employers had formal internal extended leave policies which conflicted with the FMLA, in this case Defendant's leave policy clearly states that an employee is only entitled to a maximum of twelve weeks of leave.  (See Pl.'s Opp'n Br. Ex. D.) Therefore, the Court finds that Defendant's notice regarding its own leave policy was sufficient as a matter of law.

the twelve week FMLA entitlement, she should be precluded from
stating a retaliatory claim.  The Court disagrees.  In Hunt v.
Rapides Healthcare System, LLC., 277 F.3d 757, 768-69 (5th Cir.
2001), the court held that claims for retaliation under the FMLA,
where the employee exceeded twelve weeks of leave, are not barred
as a matter of law.  Id. at 768.  The court reasoned that "[t]he
FMLA's protection against retaliation is not limited to periods in
which an employee is on FMLA leave, but encompasses the employer's
conduct both during and after the employer's FMLA leave."  Id. at
768-69.

The point was made equally forceful in Keim v. National
Railroad Passenger Corporation, No. 05-CV-4338, 2007 WL 2155656
(E.D. Pa. July 26, 2007).  In Keim, the court explained that the
employer's argument that "Plaintiff no longer had a right to keep
her original job once she exceeded her FMLA leave" was
insufficient to defeat the plaintiff's retaliation claim, id. at
*6, stating:

> However, here Plaintiff is not suing for a 'prescriptive'
> FMLA violation, but instead claims that Amtrak unlawfully
> retaliated against her for engaging in a protected
> activity.  Certainly, once an employee exceeds the duration
> of her protected leave, the employer is not obligated by
> [the] FMLA to keep open the position [sic] or to reinstate
> the employee upon her return.  See, e.g., Cehrs v.
> Northeast Ohio Alzheimer's Research Center, 155 F.3d 775,
> 784-85 (6th Cir. 1998) (employer entitled to summary
> judgment on FMLA claim where employer terminated employee
> who continued to be ill and unable to return to work after
> twelve weeks); 29 C.F.R. § 825.214(b) (if 'the employee is
> unable to perform an essential function of the position

20

because of a physical or mental condition, including the
continuation of a serious health condition, the employee
has no right to restoration to another position under the
FMLA'). However, the focus in retaliation cases is on the
subjective motive of the employer. <u>See</u> <u>generally</u> <u>Barry v.</u>
<u>Wing Memorial Hospital</u>, 142 F. Supp. 2d 161, 165 (D. Mass.
2001) (employer intent is irrelevant in 'prescriptive'
claims, but '[w]ith prescriptive rights . . . the issue is
whether the employer took the adverse action because of a
prohibited reason or for a [proper] one'). That Amtrak may
have had a legitimate basis for its employment decision is
not a complete defense to a 'proscriptive' FMLA claim.
While Amtrak may generally be justified in terminating
Plaintiff because she remained absent at the end of her
FMLA leave, this does not necessarily preclude the finding
that unlawful considerations may have nevertheless played
a determinative role in the particular decision at issue.
That, after all, is the whole premise behind the 'mixed-
motive' theory of discrimination.

<u>Id.</u>

While the Court agrees that exceeding the twelve-week FMLA

entitlement will generally defeat interference claims, it is

persuaded by the aforementioned case law that because the nature

of retaliation claims distinctly focuses on the employer's conduct

and motivations for termination, an employee is not precluded as a

matter of law from bringing a retaliation claim simply because he

or she exceeded the twelve-week FMLA entitlement.

The issues in a retaliation claim are similar to those raised

in cases alleging other types of employment discrimination.

<u>Hodgens</u>, 144 F.3d at 160. The employer's motive is relevant, and

the employer can defend its action as one based on a legitimate

nondiscriminatory reason. <u>Id.</u> In FMLA retaliation cases,

21

therefore, courts generally apply the burden-shifting framework
established in McDonnell Douglas Corp. v. Green, 411 U.S. 792,
800-06 (1973), which is used in discrimination cases brought under
Title VII of the Civil Rights Act of 1964, the Age Discrimination
in Employment Act, and the Americans with Disabilities Act.  See
Gventer v. Theraphysics Partners of Western Pa., Inc., 41 Fed.
Appx. 552, 553 (3d Cir. 2002) (considering FMLA retaliation case
where district court applied McDonnell Douglas approach); Dilenno
v. Goodwill Indus. of Mid-Eastern Pa., No. 96-8053, 1997 U.S.
Dist. LEXIS 19786 (E.D. Pa. Dec. 12, 1997), rev'd on other
grounds, 162 F.3d 235 (3d Cir. 1998) (applying McDonnell Douglas
approach).

     The McDonnell Douglas burden-shifting analysis for a
retaliation claim involves three steps.  McDonnell Douglas, 411
U.S. at 802-04.  First, the plaintiff must present sufficient
evidence to establish a prima facie case of retaliation.  Id.; see
also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53
(1981).  To do so, the plaintiff must show: (1) she availed
herself of a protected right under the FMLA; (2) she was adversely
affected by an employment decision; and (3) there is a causal
connection between the employee's protected activity and the
employer's adverse employment action.  Hogdens, 144 F.3d at 161.
By presenting proof of a prima facie case, the plaintiff creates a
rebuttable presumption that the employer unlawfully discriminated

against her.

Once the plaintiff has proved a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983); McDonnell Douglas, 411 U.S. at 802.  The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [employee's termination]" which show that the "plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" Aikens, 460 U.S. at 714 (quoting Burdine, 450 U.S. at 254-55).  Finally, if the employer's evidence creates a genuine issue of fact, then the presumption of discrimination "drops from the case" and the burden shifts back to the plaintiff, who must then show that the employer's stated reason was in fact a pretext for retaliating against her because she took protected FMLA leave. Aikens, 460 U.S. at 715.

### a. Prima Facie Case

In this case, Plaintiff has established a prima facie case, the first step in a McDonnell Douglas analysis.  Defendant concedes Plaintiff has met the first two elements for a prima facie case - that she availed herself of a protected right under the FMLA, and she was adversely affected by an employment decision.  (Def.'s Mot. at 6.)  Yet, Defendant asserts Plaintiff can not prove the third element of a prima facie case, which is a

causal connection between her FMLA leave and her termination.
(Id.)  Defendant's argument fails.

Initially, the Court notes that the Third Circuit has emphasized that when analyzing whether a plaintiff has established causation in a retaliation case, a court should view the entire record, and ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." Farrell v. Planters Lifesavers Company, 206 F.3d 271, 280 (3d Cir. 2000).  For example, causation may be established when a plaintiff can show a pattern of antagonism following the protected activity, or inconsistent reasons for terminating the employee. Id. at 280-81; see also Palen v. Alcan Packaging, 511 F. Supp. 2d 445, 449 (D.N.J. 2007).

The Court finds that a genuine issue of fact exists as to whether the termination was carried out in retaliation for Plaintiff's exercise of her FMLA rights.  Foremost among the Court's considerations are the inconsistencies between the rationale for termination by Defendant in its termination letter and the evidence in the record in this case.  In its termination letter, Defendant informed Plaintiff that she was "considered to have abandoned her position at Foulke Management," citing as evidence of Plaintiff's abandonment (1) her failure to keep Defendant informed of her "condition and intentions of returning to work," and (2) her failure to provide Defendant with ongoing

24

documentation of her medical treatment.  (Pl.'s Opp'n Br. Ex. D.)
A reasonable jury could find that the facts in this case
contradict the explanations offered for terminating Plaintiff,
which is more than sufficient to satisfy Plaintiff's prima facie
burden.  See Farrell, 206 F.3d at 280-81.  First, while Defendant
cited Plaintiff's failure to stay in touch with Defendant as
evidence of Plaintiff's abandonment of her position, the telephone
records submitted by Plaintiff show not only a pattern of regular
communication by Plaintiff with her employer, but two telephone
calls from Plaintiff to Defendant in the week prior to the date
Defendant mailed its termination letter.  (Pl.'s Opp'n Br. Ex. F.)
Second, with regard to Defendant's citation of Plaintiff's failure
to provide documentation of ongoing medical treatment, Plaintiff
testified that she and Defendant had arranged for her to provide
such documentation upon her return to work, not earlier.
(Thurston Dep. at 33.)  A reasonable jury might rely upon this
evidence and find that the rationales for termination set forth in
Defendant's letter are implausible, and that impermissible
considerations motivated Defendant's termination of Plaintiff.

Additionally, during this litigation Defendant has stated in
the answers to Plaintiff's interrogatories, (Def. Answers to
Interrogs. at 1, Pl.'s Opp'n Br. Ex. K.) and in the summary
judgment motion, that performance deficiencies discovered in an
audit of Plaintiff's work that Defendant performed while Plaintiff

was on leave were a factor in her termination.  However, neither Plaintiff's separation record nor her termination letter mention the performance deficiencies as a reason for termination.  (See Pl.'s Opp'n Br. Ex. O., Ex. G.)

Moreover, as Plaintiff has argued, a reasonable factfinder might conclude that the audit Defendant performed on Plaintiff's work while she was on leave, was itself precipitated by her decision to take FMLA leave.  Indeed, Defendant has not denied that prior to Plaintiff's leave she had never been audited or disciplined before.

Viewing the evidence in the light most favorable to Plaintiff, and considering the record as a whole, the Court finds the evidence sufficiently probative to establish a prima facie case of unlawful retaliation.  Indeed, a situation where an employer proffered several inconsistent and possibly fabricated justifications, and where a first-time audit of all of the employee's work was conducted subsequent to her leave, could lead a reasonable factfinder to conclude that Plaintiff's termination was causally related to her exercise of FMLA protections. Therefore, for the purposes of summary judgment, the causation element of Plaintiff's prima facie case is satisfied.

**b.  Non-Discriminatory Rationale**

Defendant has countered Plaintiff's prima facie case by
asserting to Plaintiff at the time of termination that she was
considered to have abandoned her position because of her excessive
leave, failure to stay in contact with Defendant, and for failing
to provide the required documentation to Defendant.  Because
Defendant has articulated legitimate, non-discriminatory reasons
for Plaintiff's termination, the Court must consider the third
prong of a McDonnell Douglas analysis.

**c. Pretext**

At the third level of analysis, the Court must assess
whether the Plaintiff can demonstrate that the employer's
legitimate reason for termination is a mere pretext for actual
retaliation.  For Defendant to obtain summary judgment at this
stage, Defendant would be required to show that Plaintiff could
not raise an issue of fact that might show that the Defendant's
explanation was pretextual. See Jalil, 873 F.2d at 708.  Likewise,
"[t]he Plaintiff's burden on summary judgment is to "point to some
evidence", direct or circumstantial, from which a factfinder could
reasonably either (1) disbelieve the employer's articulated
legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action." Constant v. Mellon
Financial Corporation, 247 Fed. Appx. 332, 337-38 (3d Cir. 2007)

27

(emphasis added) (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)).[10]  Moreover, in cases where "'defendant proffers a bagful of legitimate reasons,' casting 'substantial doubt on a fair number of them . . . may impede the employer's credibility enough so that a factfinder may rationally disbelieve the remaining proffered reasons.'" <u>Kautz v. Met-Pro Corporation</u>, 412 F.3d 463, 467 (3d Cir. 2005) (citing <u>Fuentes</u>, 32 F.3d at 764 n.7).

The Court finds that a genuine issue of fact exists as to whether Defendant's proffered non-discriminatory reasons are a pretext for unlawful discrimination.  As discussed previously, there is sufficient evidence of contradictions and inconsistencies in Defendant's proffered reasons for termination to allow a reasonable factfinder to call them into question.  <u>See</u> <u>Fuentes</u>, 32 F.3d at 764 ("[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." (citing <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1122-24 (7th Cir. 1994))).  The Court's discussion of Plaintiff's prima facie case, <u>supra</u>, demonstrates that a reasonable factfinder might "disbelieve the employer's articulated

---

[10]    The determination of whether the reason given was pretextual should be left for the jury because a "finding of discrimination is at bottom a determination of intent."  <u>Sheridan v. E.I. Dupont de Nemours and Co.</u>, 100 F.3d 1061, 1071 (3d Cir. 1996).

legitimate reasons," <u>Constant</u>, 247 Fed. Appx. at 337-38, because there is evidence in the record that casts doubt upon the plausibility of each such reason.

As a result, the Court can not rule as a matter of law that when considering the whole record a reasonable factfinder would not disbelieve the employer's proffered legitimate reasons for termination or find that unlawful considerations more likely than not played a motivating or determinative role in Defendant's decision.  Consequently, the actual reason for Plaintiff's termination is a disputed fact, and must be determined by the jury.  Therefore, summary judgment is inappropriate as to this claim in Count Two.

### 3.  **Claims Under the NJLAD (Count III)**

Defendant also seeks summary judgment as to Plaintiff's claim for wrongful discharge for a "perceived handicap" under the NJLAD. The NJLAD was enacted with the express purpose of protecting civil rights, particularly in the area of employment discrimination, where the NJLAD declares that the opportunity to gain employment without fear of discrimination is a civil right.  See <u>Viscik v. Fowler Equip. Co., Inc.</u>, 173 N.J. 1, 16 (2002) (citations omitted). New Jersey courts have long recognized a discrimination claim for those who are not disabled but are perceived to be disabled under the NJLAD.  <u>Olson v. General Electric Astrospace</u>, 966 F. Supp. 312, 316 (D.N.J. 1997) (citing <u>Poff v. Caro</u>, 549 A.2d

29

900, 903 (N.J. Super. Ct. Law Div. 1987) ("discrimination based on a perception of a handicap is within the protection of the Law Against Discrimination.")).

In analyzing claims under the NJLAD, the New Jersey Supreme Court has adopted the analysis outlined by the U.S. Supreme Court in McDonnell Douglas and discussed in Section II.2, supra.  See Andersen v. Exxon Co., U.S.A., 89 N.J. 483 (1982). To meet the prima facie burden in a disability discrimination action under the NJLAD, an employee must show that: (1) he or she has a disability or is perceived by the employer as disabled; (2) he or she was qualified for the position from which he or she was discharged; (3) he or she has suffered an adverse employment action because of that disability; and (4) the employer sought someone else to do the same work. Deane v. Pocono Medical Center, 142 F.3d 138, 142-44 (3d Cir. 1998).

New Jersey courts construing the NJLAD have repeatedly emphasized the NJLAD's broad remedial nature, mandating that it should be construed liberally.[11]  Olson, 966 F. Supp. at 315. In Clowes v. Terminix International Inc., 538 A.2d 794, 803 (1988), the New Jersey Supreme Court determined that "the statutory

---

[11]  The NJLAD, unlike the Americans With Disabilities Act (ADA), has no major life activities handicap requirement.  Olson, 966 F. Supp. at 314-15 (citing Gimello v. Agency Rent-A-Car Systems, 594 A.2d 264, 275 (N.J. Super. Ct. App. Div. 1991); Illingworth v. Nestle U.S.A., Inc., 926 F. Supp. 482, 488 (D.N.J. 1996)).

definition of 'handicapped' is very broad in scope" and held that
alcoholism was a handicap within the NJLAD. <u>Clowes</u>, 538 A.2d at
804; <u>see also</u> <u>Gimello</u>, 594 A.2d at 276 (holding that obesity was a
handicap entitled to protection under the NJLAD).[12]  Moreover, the
evidentiary burden on Plaintiff at this stage is not intended to
be laborious, and merely requires that the fact pattern is
consistent with discriminatory intent. <u>Marzano v. Computer</u>
<u>Science Corp. Inc.</u>, 91 F.3d 497, 508 (3d Cir. 1996).

Plaintiff does not argue that she is disabled, but rather
that Defendant perceived her as being disabled and unable to do

─────────────

[12]  The statutory definition of disability under the NJLAD
is as follows:

> "Disability" means physical disability,
> infirmity, malformation or disfigurement which
> is caused by bodily injury, birth defect or
> illness including epilepsy and other seizure
> disorders, and which shall include, but not be
> limited to, any degree of paralysis,
> amputation, lack of physical coordination,
> blindness or visual impediment, deafness or
> hearing impediment, muteness or speech
> impediment or physical reliance on a service
> or guide dog, wheelchair, or other remedial
> appliance or device, or any mental,
> psychological or developmental disability
> resulting from anatomical, psychological,
> physiological or neurological conditions which
> prevents the normal exercise of any bodily or
> mental functions or is demonstrable, medically
> or psychologically, by accepted clinical or
> laboratory diagnostic techniques. Disability
> shall also mean AIDS or HIV infection.

N.J. Stat. Ann. § 10:5-5(q)

her job as a result of her surgery.   To state a claim for

perceived handicap discrimination under the NJLAD, the Plaintiff

must allege facts showing that Defendant perceived the Plaintiff

as having a physical or mental condition that would qualify as

disabled under the NJLAD.   See Heitzman v. Monmouth County, 728

A.2d 297, 301 (N.J. Super. App. Div. 1999).

Defendant asserts that Plaintiff has failed to make out a

prima facie case of perceived disability because she has not

pointed to any specific facts which would establish that the

Defendant perceived her as being handicapped.   Spagnoli v. Brown &

Brown Metro, Inc., No. 06-414, 2007 WL 2362602, at *10 (D.N.J.

Aug. 15, 2007).   In support of its motion for summary judgment,

Defendant points to Plaintiff's deposition, where she stated that

she did not know of any biased perception the Defendant had of her

regarding her surgery.   The deposition transcript specifically

provides:

> Q: Did Dona Forrest make any comment to you that she  felt that
> you were unable to physically do the job once you returned?
> A: No.
> Q: Did she tell you that anyone else from the Triplex thought
> you were physically unable to do the job?
> A: I don't believe so, no.
> Q: Did anyone else at the Triplex ever indicate to you that they
> -- they felt that you were not going to be capable of the job?
> A: No, no one else ever contacted me.
> Q: Did you ever ask them for any type of accommodation for your
> Achilles tendon issue, either while you were out on disability
> or as you were planning on returning?

A: No.

Q: Did you ever tell Dona Forrest or anyone else from Cherry Hill Triplex that you would need a special accommodation to do your job at all once you returned?

A: No.

(Thurston Dep. at 53-54.)

The Court agrees with Defendant and will grant its motion for summary judgment as to Plaintiff's NJLAD claim.  Plaintiff has identified no facts from which a reasonable jury could find that Defendant perceived her as being disabled.  Plaintiff's only support for her NJLAD claim is that "Ms. Thurston took a medical leave of absence for a surgery on her ankle that required her to be out for approximately 12 weeks, and Defendant was well aware that Ms. Thurston was going to be getting therapy for an indefinite and unspecified period of time . . . ."  (Pl's. Opp'n Br. at 37.) However, to survive a motion for summary judgment, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  In the instant matter, Plaintiff has not pointed to any sufficiently probative facts which would establish that Defendant perceived her as disabled nor that such a perception was a motivating factor in her termination.

The reasoning of the court in Spagnoli is persuasive and on point.  In Spagnoli, an employee who was terminated after returning

from medical leave brought suit against her employer, alleging among other things, unlawful discrimination based upon a perceived handicap in violation of the NJLAD.  Id. at *1.  The court found that because the employee had testified that she did not believe that anyone at her employer perceived her as handicapped, and had only alleged that "maybe the company was worried that my pulmonary embolism would [a]ffect my job," she had failed to point to any specific facts which would establish that her employer perceived her as handicapped, and therefore had failed to establish a prima facie case.  Id. at *10; see also Lowe-Surge v. Hagedorn Gero-Psychiatric Hospital, 2006 WL 709602, at *3 (N.J. Super. App. Div. 2006) (holding that the employee had failed to establish a prima facie case of perceived handicap discrimination because the employee stated in her deposition that she did not know if the employer had any biased perception of her).

Akin to Spagnoli and Lowe-Surge, Plaintiff has introduced no evidence from which a jury might reasonably infer that Defendant perceived her as being disabled.  Ultimately, as in Spagnoli, Plaintiff has merely made a conclusory accusation, lacking any evidentiary basis, that because her employer was aware of the reason for her medical leave, a discriminatory motive based on a perceived handicap must necessarily follow.  No facts exist supporting a claim that she was terminated because of that condition.  Neither Plaintiff's separation record nor any of her

34

former co-workers' depositions suggest that Plaintiff's termination was related to a belief by Defendant that Plaintiff was disabled and could not perform her responsibilities.  As a result, Plaintiff has failed to establish a prima facie case of discrimination under the NJLAD, and her claim consequently fails as a matter of law. Therefore, because there is no genuine issue of material of fact, summary judgment is appropriate as to Plaintiff's NJLAD claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be denied in part as to Count II and granted in part sd to Counts I and III.  As to Plaintiff's claims that the Defendant violated the FMLA by retaliating against her for exercising her FMLA rights, Defendant's motion will be denied.  However, because Plaintiff's claims for FMLA interference and unlawful discrimination under the NJLAD fail as a matter of law, summary judgment is appropriate with regard to those claims.  The accompanying Order is entered.

August 5, 2008
DATE

Jerome B. Simandle
JEROME B. SIMANDLE
United States District Judge